MARK L. WEBB (STATE BAR NO. 67959)
LAW OFFICE OF MARK L. WEBB
333 PINE STREET, 5TH FLOOR
SAN FRANCISCO, CA 94104
TEL: (415) 434-0500

**Attorney for Plaintiffs**
JANE DOE, individually, and on
behalf of all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>MATCH.COM,<br><br>　　　　Defendants. | Case No.: CV11-03795 SVM (JENx)<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: May 23, 2011<br><br>Time and Location: 1:30 pm,<br><br>Courtroom 6<br>(Hon. Stephen V. Wilson) |

## I. RELIEF REQUESTED

Plaintiff moves the Court to issue the following relief:

　　A.　Preliminarily enjoining defendant Match.com from facilitating further introductions between subscribers until it implements a system which screens out sex offenders registered in federal and local databases; and/or

1

B.   Preliminarily enjoining defendant Match.com from enrolling new subscribers until it implements a system which screens out sex offenders registered in federal and local databases.

## II. STATEMENT OF FACTS

This case is before this Court since it was removed from state court by the defendant Match.com the day after plaintiff filed a request for a TRO. Thereafter, plaintiff filed essentially the same TRO, this time before this Honorable Court. This Court issued a ruling on Friday May 6, 2011 denying the TRO, but ordering a hearing on shortened time for May 23, 2011 to decide if a preliminary injunction should be ordered.

The facts are that Jane Doe, whose identity has been disclosed as Carole Markin, a single woman subscriber to Match.com, was physically forced to perform oral copulation, a form of rape, on another Match.com member named Alan Wurtzel. Unknown to Ms. Markin, Wurtzel had been convicted on at least six separate counts of sexual assault on other women.  These offenses required him to register as a sex offender in Los Angeles and this fact was easily discoverable through basic screening (see Decl of Pierre Merkl, Ex. 1).

Ms. Markin is a Harvard educated distinguished member of the Hollywood film community and has voluntarily brought this Class Action on behalf of Match.com members so as to compel Match.com to use reasonable and effective screening techniques to prevent other known sexual predators from using this site. Ms. Markin has asked for no monetary relief and simply wishes to prevent this type of violent trauma to occur to the extent effective screening can reduce the risk. Defendant Match.com originally refused altogether to do any kind of screening at all, and had never done so.  (see Decl of ML Webb, Ex. 2).  After the filing of the complaint in Superior Court in this matter, substantial press coverage made public the facts of this rape, plaintiff's requests for screening. As a result, within approximately three days, Match.com called Plaintiffs' counsel Mark L. Webb on

Sunday morning, April 17, 2011 at 8:30 am at his home.  In that conversation, Mr. Webb was told that Match.com was going to issue a media alert the following day or that same day announcing its intention to begin screening sex offenders within 60 to 90 days by use of the Federal Sex Offender Database.  Mr. Webb was invited to issue a quote to be included in Match.com's media alert to the effect that he was pleased with Match.com's announcement.  Mr. Webb declined, and thereafter asked Match.com through its attorneys to meet and confer about quicker and more effective means to screen out sex offenders.  Although this request to meet and confer was made several times and the local rules require the attorneys to at least attempt to do so, Match.com attorneys have repeatedly refused forcing Webb to file the instant motion for preliminary injunction on behalf of the public's safety.

Submitted along with this motion are declarations of two separate reputable investigative background check firms stating categorically that screening of sex offenders could be implemented in *a matter of a few days*.  Also, these experts state that a check of the Federal Sex Offender Database is not effective and would need to be accompanied by a check of the county of residence of the member wherever possible.  (see Decls of Merkl, Ex. 1 and Decls of Mallette Ex. 3).

Match.com is the largest on-line dating service in the world and charges its members each month for a subscription which must be paid by credit card. Match.com advertises actively on television that "one in five relationships in America begin with on-line dating."  It further advertises that more marriages result from Match.com dates than any other service.

Match.com has millions of members and its holding corporation, IAC, owns numerous other dating sites of which Match.com is the largest.  Match.com has successfully set up a computer system which technologically allows for communication among members anywhere in the world.  It is without a doubt that Match.com and its holding company IAC has the most technologically advanced

communication systems anywhere and is growing!  Presumably, they are capable of implementing an effective sex offender screening system at will.

Plaintiff Carol Markin, known as Jane Doe in this case, seeks only that which is reasonable and appropriate for public safety: that Match.com implement more effective screening techniques so that other women need not endure her life-changing trauma and the unduly risk of rape from sexual predators with a known history.  This case is one of first impression since at no other time has a for-profit dating site been brought to Court to test its standards for screening sex offenders.  Plaintiff will amend the complaint to ask Match.com to refrain from signing up new members until they put into effect appropriate and effective screening so as to minimize or at least reduce the risk of rape to other members.

## II. LEGAL ARGUMENT

### A. Legal Standards for Granting Preliminary Injunctions

Federal Rule of Civil Procedure 65 gives this Court broad discretion to issue preliminary injunction in order to avoid further harm to any party. Here, it is too late to stop what happened to Jane Doe. However, it is not too late to take appropriate measures to stop it from happening again since millions of people use Defendant's web-site to set-up dates every day.

The United States Supreme Court recently articulated with specificity the showing necessary to succeed in obtaining a preliminary injunction. In *Winter v. Natural Res. Def. Council*, the Court said that a plaintiff must demonstrate:

    (1) that he is likely to succeed on the merits;

    (2) that he is likely to suffer irreparable harm in the absence of preliminary relief;

    (3) that the balance of equities tips in his favor; and

    (4) that an injunction is in the public interest.

*Winter v. Natural Res. Def. Council* (2008) 129 S. Ct. 365, 374. In *Winter*, the Supreme Court found that the plaintiff failed to meet this burden. There,

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION      CASE NO. CV11-03795 SVM (JENx)

environmental organizations were concerned that the Navy's use of mid-frequency active sonar in training exercises would cause serious harm marine life. They sought a preliminary injunction. The court decided that it was not in the public interests to limit the Navy's use of sonar because the alleged irreparable injury to marine species was outweighed by the public interest and the Navy's interest in effective, realistic training of its sailors.

Using the standard announced by the Supreme Court, the Ninth Circuit has upheld the preliminary injunctions. For example, an injunction was ordered when the Alliance for the Wild Rockies brought suit against the Units States Forest Service seeking to enjoin logging project and timber sales. There, this Circuit, only three months ago, held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming that the other two elements of the <u>Winter</u> test are also met." <u>Alliance for the Wild Rockies v. Cottrell</u> (9th Cir. 2011) 632 F.3d 1127, 1132. Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing or another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits. *Id.* (*citing <u>Clear Channel Outdoor, Inc. v. City of Los Angeles</u>* (9th Cir. 2003) 340 F.3d 810, 813.

**B. The Case at Bar**

In this action, plaintiff and the class of Match.com members that she represents seek to have effective, yet economical standards for screening of sex offenders implemented immediately. Specifically sought is a system of screening that is both effective and economical so that not to burden the Defendant with undue expense and with realization of the fact that **no** screening, no matter how expensive, can be failsafe. The system requested would be substantially more effective in discovering such sex offenders than the one proposed by the defendant. This case easily satisfies the four prong test set up in <u>Winters</u>.

### 1. Likelihood of Success on the Merits

Plaintiff has submitted letters and declarations establishing that Defendant's proposed screening system is both ineffective and untimely. Plaintiff has pled in the Complaint and accompanying documents before this Court that attempts to meet and confer with defendant have been met with outright refusals to even discuss the matter. Defendant, failed to discuss the matter **or put forth any evidence** of why it's screening system is superior, has presented no proof or support for its position, and no justification for its failure to at least discuss the matter. Indeed, it is unlikely that any such evidence supporting their position will be forthcoming.

The fact remains that plaintiff would prevail on the merits because defendant's announced screening system is deficient: there is no need to wait 60-90 days, a time frame that is both unnecessarily long and unnecessarily vague. Furthermore, Match.com's intended use of the Federal Sex Offender Database is incompetent to turn up, with any degree of success, sex offenders and rapists who must register at the county level and whose names may never reach the federal database. A search of the county of residence is both easy to perform and inexpensive or free in many metropolitan areas; there is no reason why this should not be included in the search. Certainly, Defendant has put forth no evidence to the contrary.

Therefore, plaintiff is likely to succeed on the merits.

### 2. Irreparable Harm

When a woman is a victim of rape or sexual assault, it can change her life forever. Carole Markin, in her attached declaration describes her ongoing treatment with a therapist and her inability to sustain an intimate relationship with a man due to the fears she lives with from her rape. It is clear that this is a response common to rape victims.

Statistically, a million or more date rapes occur each year according to Department of Justice. If Match.com is the largest on-line dating service, as it claims to be, we need no statistics professor to tell us that many women are at risk absent appropriate screening standards. The fact that these standards can be implemented almost immediately given the sophisticated technology available dictates that this be done at once, not in 60-90 days, or on Match.com timetable. Match.com cannot explain why even one woman should have to suffer the risk of going on a date with a man who might be a convicted sex offender screenable through use of appropriate methods.

It is also true that sex offenders have the highest rate of recidivism of any crime, which fact would be proven at trial. This means that such sex offenders are likely to subject other women to rape and other types of sexual assaults are given the opportunity. Therefore, one cannot imagine a counter argument where lack of irreparable harm can be shown.

The issuance of a preliminary injunction requiring that adequate standards be implemented immediately will substantially reduce the likelihood of unsuspecting victim being raped.

### 3. Balance of Equities

Match.com is a billion dollar company, owned by a multi-billion dollar company called IAC. It spans the globe and affects millions of people's lives every day. It has the power and the wealth to communicate to any forum it desires. Further, it is growing more every day with its recent expansion into China. (Plaintiff is issuing Notices to Appear at the Hearing at to Company executives who can shed more light).

On the other side of this case is a single woman who has had the courage to reveal her identity at great cost. (See Decl. of Carole Markin, Ex. 4)

Obviously the dispared conditions of these opposing parties should be considered by this Court in balancing the equities in the context of what plaintiff is requesting for herself and on behalf of the class of Match.com members.

It is undisputed that a woman who goes on a date set up through on-line dating takes a risk and must use reasonable care in the face of that risk. However, it is inequitable and unfair to expect her to be solely responsible for that risk without at least asking the Defendant, who was paid to facilitate the introduction, to share in it. (This has, in effect, been acknowledged already by Match.com's own concession that screening of sex offenders is necessary).

Therefore, the equities would dictate that Match.com be ordered to use effective and prompt screening techniques.

### 4. Public Interest

The public has a clear interest on many levels in reducing the number of rapes that occur in this country. Our hospitals and doctors are charged with treating these victims after the fact. We have rape crisis centers whose sole function is to care for these unfortunates. We have entire divisions of police department dedicated to sex offenses. Many or all of the above services are paid for by taxpayers. To the extent that Match.com fails to be responsible in doing its share in reducing the number of such life-changing traumas, it costs our nation untold millions of dollars, because of its irresponsibility.

Match.com is in the marketplace of facilitating dates amongst strangers. It does so for a healthy profit. Many investors have become multi-millionaires due to Match.com's operations. Along with power and wealth comes responsibility. Thus, the public interest factor demands that Match.com contribute reasonably to reducing the damage in this arena.

### 5. The Winters standard has been completely met

As set forth above, Plaintiff meets all factors for preliminary relief; Plaintiff is entitled to a preliminary injunction. While the first two elements are met

adequately, elements three and four are **overwhelmingly** proven in plaintiffs' favor: (1) the balance of equities, measuring the relative power and technological sophistication of Match.com compared to any individual class member weighs in Plaintiff's favor; and (2) the public interest in avoiding what is one of the most abhorrent crimes in our society that leaves a horrible impact on the victim forever[1] is likewise strongly in Plaintiff's favor.

Therefore, given the most recent direction from this appellate circuit, plaintiff has more than satisfied the legal standards for the preliminary injunction.

### III. CONCLUSION

This is a classic case of a hugely powerful and successful corporation using that power against the individuals who made it wealthy in the first place. With its untold billions, Match.com has used lawyers in Los Angeles, Texas and unknown other places to refuse to even consider alternatives to an inadequate sex offender screening plan that they stubbornly adhere to, inadequate as it is.

Thankfully in this Country the judiciary is available to those of us who are less wealthy and powerful in order to settle such disputes regardless of this disparity in power and wealth. That is why the figure of Lady Justice is blindfolded; so that justice can be dispensed without regard to the parties' relative power.

DATED: May 11, 2011                THE LAW OFFICE OF MARK L. WEBB

                                   BY:         /s/
                                       _____
                                       Mark L. Webb

---

[1] Oprah Winfrey, perhaps one of the most recognized public figures has talked openly about the devastating effect of her having been sexually molested, on public television.