MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT (Bar No. 108533)
Email: rplatt@manatt.com
JOSEPH E. LASKA (Bar No. 221055)
Email: jlaska@manatt.com
11355 West Olympic Boulevard
Los Angeles, California 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

*Attorneys for Defendant*
MATCH.COM, LLC,
erroneously sued as Match.com

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MATCH.COM,<br><br>Defendant. | Case No. CV11-3795 SVW (JEMx)<br><br>Hon. Stephen V. Wilson<br><br>**Filed as Class Action**<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Filed concurrently with:<br>1. Declaration of Sharmistha Dubey;<br>2. Declaration of Robert H. Platt; and<br>3. Request for Judicial Notice.<br><br>Hearing Date: May 23, 2011<br>Hearing Time: 1:30 p.m.<br>Courtroom: 6<br><br>Action filed: April 13, 2011 |

1

# TABLE OF CONTENTS

2

**Page**

3    PRELIMINARY STATEMENT .................................................................................. 1

4    STATEMENT OF FACTS .......................................................................................... 3

5         A.   The User Agreement Between Plaintiff and Match Expressly
               States That Match Does Not Screen Its Subscribers ............................ 3

6         B.   Plaintiff's Allegations ............................................................................. 3

7         C.   Match's Announcement That It Intends to Begin Screening
               Subscribers against the National Sex Offender Database.................... 4

8         D.   Plaintiff and Her Attorney Applauded Match's Decision to
               Screen Subscribers against the National Sex Offender
9              Database—and Then Changed Their Minds and, Three Weeks
               Later, Applied for a TRO ........................................................................ 5

10        E.   This Court Denied Plaintiff's Application for a TRO, Holding
               That She Had Not Demonstrated a Likelihood of Success or
11             Irreparable Harm ..................................................................................... 6

12   I.   PLAINTIFF LACKS STANDING BECAUSE SHE IS NO LONGER
          A MATCH SUBSCRIBER ................................................................................ 6

13   II.  PLAINTIFF HAS NOT SATISFIED ANY OF THE
          REQUIREMENTS FOR A PRELIMINARY INJUNCTION ....................... 7

14        A.   Plaintiff Still Cannot Demonstrate a Likelihood of Success on
15             the Merits ................................................................................................. 9

16        B.   Plaintiff Has Again Failed to Demonstrate Irreparable Harm in
               the Absence of Preliminary Relief ........................................................ 11

17        C.   The Balance of the Equities Still Tips Entirely in Match's Favor...... 13

          D.   Public Policy Favors Denying the Requested Relief ......................... 13

18   CONCLUSION............................................................................................................ 15

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300253299.6                                    i

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alliance for Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. Jan. 25, 2011)..........................................7, 8

*Anderson v. United States*,
  612 F.2d 1112 (9th Cir. 1979) ............................................................8

*Bailey v. Patterson*,
  369 U.S. 31 (1962) ............................................................................12

*Chalk v. U.S. Dist. Ct.*,
  840 F.2d 701 (9th Cir. 1988) ..............................................................8

*Freedom Holdings, Inc. v. Spitzer*,
  408 F.3d 112 (2d Cir. 2005) ..............................................................11

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009) ..............................................................8

*Schrier v. University of Colorado*,
  427 F.3d 1253 (10th Cir. 2005) ..........................................................8

*Summers v. Earth Island Inst.*,
  129 S. Ct. 1142 (2009) ...................................................................6, 7

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) ...............................................................7, 11, 13

## STATUTES

28 U.S.C. § 1927.....................................................................................15

Civil Code § 1770(a)(10)......................................................................4, 9

N.J.S.A. § 56:8-171(4)(b) (West 2008) ...................................................9

## RULES

Fed. R. Civ. P. 11..................................................................................15

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300253299.6

ii

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

When this Court denied Plaintiff's recent application for a temporary restraining order ("TRO"), it held that she "ha[d] not met her burden in showing either a likelihood of success or serious questions [on the merits], and also in showing irreparable harm."  (Order p. 2, at Docket No. 6.)  Plaintiff's motion for a preliminary injunction does not cure any of these fatal defects and should likewise be denied.

Despite the absence of any legal duty on the part of Defendant Match.com, LLC ("Match") to screen users of its online dating service, Plaintiff asks this Court to shut down Match's service until such time as Match implements a "screening" process on its more than one million subscribers to determine whether they have been previously convicted of sexual offenses.  Although Plaintiff casts the relief sought as merely prohibitory—enjoining Match "from facilitating further introductions between subscribers . . . and/or . . . from enrolling new subscribers" (Motion at 1:25-2:3)—the proposed relief, as this Court already has observed, is actually "a mandatory injunction prohibiting the normal operation of Defendant's business and requiring an immediate implementation of screening procedures." (Order p. 2.)  A mandatory injunction imposes a "higher bar" on Plaintiff.  (*Id*.) And yet Plaintiff's motion—like her previous TRO application—provides the Court with no basis whatsoever to grant such extraordinary relief.

As a threshold matter, Plaintiff admits that she lacks standing to pursue the relief sought because she is concededly no longer a Match subscriber, and therefore it is "too late" for the proposed injunction to benefit her.  (Motion at 4:15-16.) Plaintiff's lack of standing compels not only denial of her motion but also dismissal of this entire action, which seeks only injunctive relief.

Moreover, Plaintiff has completely failed to demonstrate a likelihood of success on the merits or even serious questions going to the merits.  In her motion,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300253299.6                                    1

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1    as in her prior TRO application, Plaintiff does not even address whether Match has

2    any legal duty to screen its members or subscribers, much less cite any legal

3    authority supporting the imposition of such a duty.  That is because there is no such

4    duty.  The sole statute cited in Plaintiff's complaint—an inapposite provision of the

5    Consumers Legal Remedies Act ("CLRA") prohibiting "[a]dvertising goods or

6    services with intent not to supply reasonably expectable demand"—is not

7    mentioned anywhere in the motion.  Also absent from the motion is any discussion

8    of Match's Terms of Use Agreement ("User Agreement"), to which Plaintiff and all

9    putative class members agreed as a condition of using Match's service.  The User

10   Agreement clearly and conspicuously states that Match does not screen its members

11   and warns members that they are responsible for their own safety.

12        Without a basis for asserting that Match is legally required to screen its

13   subscribers, Plaintiff has simply skipped over that critical part of the legal analysis

14   and has fallen back on arguing that her preferred screening process would be better

15   than the one that Match has announced.  That argument, however, is irrelevant.  No

16   legal duty requires Match to screen its users, and Match's announcement that it

17   intends to begin screening its more than one million U.S. subscribers against the

18   National Sex Offender Registry within the next 60 to 90 days plainly does not give

19   rise to a legal duty to do so.  So Plaintiff's purported "improvements" on what

20   Match is contemplating are of no moment, as they presuppose a legal duty that does

21   not exist.

22        Next, Plaintiff—who admittedly is no longer a Match subscriber—is not

23   danger of suffering any harm, irreparable or otherwise, if the proposed injunction is

24   denied.  In acknowledging that "it is too late to stop what happened to [her]"

25   (Motion at 4:15-16), Plaintiff concedes that she cannot satisfy the irreparable harm

26   requirement.  Instead, the motion, like the failed TRO application, once again

27   focuses solely on the alleged harm to the putative class.  But, as this Court has

28   already held, "no class has yet been certified in this case and it appears that Plaintiff

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300253299.6                                        2
                    OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1    could not represent a class of current subscribers." (Order p. 2.)  And, in any event,

2    Plaintiff once again offers no evidence demonstrating that any class member is

3    threatened with imminent sexual assault as a result of her Match subscription, much

4    less that any such assault will be prevented if Match engages in screening.

5    Plaintiff's motion is deficient for all of the same reasons as her TRO

6    application and should be denied.

7    ### STATEMENT OF FACTS

8    **A.    The User Agreement Between Plaintiff and Match Expressly States That
9    Match Does Not Screen Its Subscribers.**

10    Match operates the website located at www.match.com, a service enabling

11    single adults to meet each other online.  Before using the Match service, every

12    member (including Plaintiff and every putative class member) must first agree to

13    the terms of Match's User Agreement.  (Decl. of Sharmistha Dubey ("Dubey

14    Decl.") ¶ 5 and Exhibit A.)  Section 7 of the User Agreement states in capital letters

15    and boldface font:

16    **YOU UNDERSTAND THAT MATCH.COM DOES
     NOT IN ANY WAY SCREEN ITS MEMBERS, NOR
17    DOES MATCH.COM INQUIRE INTO THE
     BACKGROUNDS OF ITS MEMBERS OR
18    ATTEMPT TO VERIFY THE STATEMENTS OF
     ITS MEMBERS.**
19

20    (Dubey Decl., Exhibit A (emphasis in original).)

21    Thus, by assenting to the User Agreement, Plaintiff and the putative class

22    members expressly acknowledged that Match does not screen its members.

23    **B.    Plaintiff's Allegations.**

24    Plaintiff filed her complaint in the Los Angeles County Superior Court on

25    April 13, 2011.  Match timely removed the action to this Court on May 4, 2011.

26    (Docket No. 1.)

27    Plaintiff alleges that she was sexually assaulted by a man whom she met

28    using Match's service, and that this man had been previously convicted of sexual

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

300253299.6                                              3

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

assault.  (Compl. ¶¶ 3, 19-20.)  Plaintiff further alleges that Match does not screen its members to determine whether they have been previously convicted of sexual offenses.  (*Id*. ¶¶ 2, 4, 5.)

Based upon these allegations, Plaintiff asserts a single claim for injunctive relief under Civil Code Section 1770(a)(10)[1] for failure to "institute basic inexpensive screening processes to weed out known registered sex offenders." (Compl. ¶ 24.)  Plaintiff seeks "[a]n injunction prohibiting [Match] from signing up further members until such basic screening is implemented," plus her attorneys' fees.  (*Id*., Prayer for Relief p. 7.)  She further seeks to certify a class consisting of all female subscribers of Match from August 2010 to the present.  (Compl. ¶ 9.)[2]

## C.  Match's Announcement That It Intends to Begin Screening Subscribers against the National Sex Offender Database.

Match has been researching the possibility of screening subscribers for several years, but has heretofore refrained from implementing screening procedures due to limitations in the available databases.  (Dubey Decl. ¶ 7.)  For example, the available federal, state, and local databases are not completely accurate:  they sometimes fail to identify convicted sex offenders, and sometimes generate false positives.  (*Id*.)  Moreover, Match has been, and remains, concerned that screening subscribers might give its users a false sense of security.  (*Id*.)  Accordingly, Match has focused its user protection efforts on providing its members with detailed advice about dating safety.  (*Id.*)

Recently, Match concluded that the benefits of screening appear to outweigh the risks.  On April 17, 2011, Match announced that it intends to begin screening its

---

[1] Civil Code Section 1770(a)(10), a provision of the CLRA, prohibits"[a]dvertising goods or services with intent not to supply reasonably expectable demand, unless the advertisement discloses a limitation of quantity."

[2] The injunction requested in Plaintiff's motion is broader than the one requested in her complaint.  (*Compare* Compl. ¶ 24 (seeking an injunction "prohibiting [Match] from signing up further members until such basic screening is implemented") *with* Motion at 1:25-2:3 (seeking to prohibit Match "from facilitating further introductions between subscribers . . . and/or . . . from enrolling new subscribers").)

1  current and future subscribers against the National Sex Offender Database.  (Dubey
2  Decl. ¶ 8 and Exhibit B.)  Match stated that it expected to be able to implement a
3  screening process within 60 to 90 days.  (*Id*.)

4  Since its announcement a month ago, Match has consulted with the leading
5  vendors in the field to determine how best to implement screening of its more than
6  one million current subscribers nationwide, plus future subscribers.  (Dubey Decl.
7  ¶ 9.)  Once Match formally retains a vendor, it will begin implementing the
8  screening functionality and modifying the other affected aspects of its business.
9  (*Id*.)  The implementation process will involve, among other things, determining
10  which of the available databases to search; addressing related privacy and data
11  protection issues; updating customer care procedures and communications; revising
12  the User Agreement, privacy policy, and other pertinent disclosures on Match's
13  website; and running test searches to ensure that the vendor's system is compatible
14  with Match's system—and that the initiative in fact works.  (*Id*.)

15  **D.    Plaintiff and Her Attorney Applauded Match's Decision to Screen
16         Subscribers against the National Sex Offender Database—and Then
       Changed Their Minds and, Three Weeks Later, Applied for a TRO.**

17  Following Match's announcement, Plaintiff and her attorney began a media
18  tour that included appearances on CNN, NBC's *The Today Show*, and ABC's *Good*
19  *Morning America*.  At that point, Plaintiff revealed her identity as television
20  producer Carole Markin.[3]  (Decl. of Robert H. Platt ("Platt Decl."), Exhibit 2; *see*
21  *also* Motion at 2:11-12.)  During interviews on April 18-19, 2011, Plaintiff
22  described herself as the "Erin Brockovich of Online Dating."  (*Id*.)  Meanwhile,
23  Plaintiff's attorney announced that he was "proud and happy to be a part of this
24  bold effort to reduce the risks of further sexual assaults on women."  (*Id*.)

25  On April 29, 2011, after the media coverage had faded away, Plaintiff's
26  attorney contacted Match to discuss how it planned to screen subscribers and offer

27
28

---

[3] Plaintiff is also the author of a series of books about "bad dates."
(*See* http://www.amazon.com/s/ref=nb_sb_noss?url=search-alias%3Dstripbooks
&field-keywords=carole+markin&x=14&y=17.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300253299.6                                                    5
                    OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1  his (and Plaintiff's) input.  (Platt Decl. ¶ 5.)  When Match declined to involve

2  Plaintiff in its deliberations concerning the implementation process, she applied to

3  this Court for a temporary restraining order compelling Match to implement her

4  preferred screening procedure.  (Platt Decl. ¶ 5; Docket No. 6.)

5  **E.   This Court Denied Plaintiff's Application for a TRO, Holding That She
6      Had Not Demonstrated a Likelihood of Success or Irreparable Harm.**

7       On May 6, 2011, this Court denied Plaintiff's TRO application.  The Court

8  determined that Plaintiff must "meet a higher bar" because she "seeks a mandatory

9  injunction prohibiting the normal operation of [Match]'s business and requiring an

10 immediate implementation of screening procedures."  (Order p. 2.)  Plaintiff failed

11 to satisfy that burden because she "d[id] not cite to any factors or authority showing

12 a likelihood of success on the merits or raising serious questions as to the merits of

13 her claim. . . ."  (*Id.*)  The Court also held that Plaintiff had failed to show any

14 irreparable harm because she "is no longer a subscriber to [Match]'s services and

15 has not shown how [Match]'s failure to implement immediate screening procedures

16 would harm her."  (*Id.*)  To the extent that Plaintiff sought relief on behalf of the

17 putative class, the Court noted that "no class has yet been certified in this case" and

18 that, because Plaintiff cancelled her Match subscription months ago, "it appears that

19 Plaintiff could not represent a class of current subscribers."  (*Id.*)

20                              **ARGUMENT**

21                                  **I.**
22  **PLAINTIFF LACKS STANDING BECAUSE SHE IS NO LONGER A
    MATCH SUBSCRIBER.**

23       Plaintiff admittedly is no longer a Match subscriber.  (Decl. of Carole Markin

24 ¶ 16; *accord* Dubey Decl. ¶ 6 (subscription cancelled on January 31, 2011).)  As a

25 result, Plaintiff lacks standing to pursue injunctive relief on behalf of current and

26 future Match subscribers.  As the Supreme Court made clear in *Summers v. Earth

27 Island Inst.*, 129 S. Ct. 1142, 1149 (2009), Plaintiff is entitled to injunctive relief

28 only if she can prove herself to be

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

300253299.6                                6

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1

2

3

4
> under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

5
*Id.*

6 Plaintiff cannot satisfy this burden. She acknowledges that "it is too late to

7 stop what happened to [her]." (Motion at 4:15-16.) This concession is fatal to

8 Plaintiff's motion, and this Court may dispose of the motion—and, indeed, this

9 entire case, since Plaintiff seeks only injunctive relief—on this jurisdictional

10 ground without proceeding any further.

11
12
## II.
## PLAINTIFF HAS NOT SATISFIED ANY OF THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION.

13 A preliminary injunction is an "extraordinary remedy" that may be awarded

14 only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v.*

15 *Natural Resources Defense Council, Inc.*, 555 U.S. 7, 25 (2008). As the Supreme

16 Court has made clear, a plaintiff may not obtain a preliminary injunction unless he

17 can establish: "[1] that he is likely to succeed on the merits, [2] that he is likely to

18 suffer irreparable harm in the absence of preliminary relief, [3] that the balance of

19 equities tips in his favor, and [4] that an injunction is in the public interest."

20 *Winter*, 555 U.S. at 24-25.

21 The Ninth Circuit has adopted a "sliding scale" approach to preliminary

22 injunctions, under which "[a] preliminary injunction is appropriate when a plaintiff

23 demonstrates . . . that serious questions going to the merits were raised and the

24 balance of hardships tips sharply in the plaintiff's favor." *Alliance for Wild Rockies*

25 *v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. Jan. 25, 2011). This approach has

26 been held to survive *Winter* and supplement its four-factor test. *Id.* at 1135. Thus,

27 in the Ninth Circuit, "'serious questions going to the merits' and a balance of

28 hardships that tips sharply towards the plaintiff can support issuance of a

1    preliminary injunction," but only if "the plaintiff also shows that there is a

2    likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*

3          A plaintiff's request for preliminary injunctive relief must be "more closely

4    scrutinized" where he seeks a "disfavored" injunction.  *E.g.*, *Schrier v. University of*

5    *Colorado*, 427 F.3d 1253, 1260-61 (10th Cir. 2005).  A "disfavored" injunction is

6    one that (1) disturbs the status quo, (2) is mandatory as opposed to prohibitory, and

7    (3) provides substantially all of the relief that the applicant would obtain after a full

8    trial on the merits.  *Id.*

9          The injunction sought by Plaintiff is clearly disfavored.  It seeks to upend—

10   not preserve—the status quo.  *See Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 704 (9th

11   Cir. 1988) ("The basic function of a preliminary injunction is to preserve the status

12   quo pending a determination of the action on the merits.").  That is because the

13   injunction sought by Plaintiff is, at its core, mandatory:  it would compel Match to

14   begin conducting background screening immediately, on pain of going out of

15   business.  *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571

16   F.3d 873, 879 (9th Cir. 2009) (a mandatory injunction "orders a responsible party to

17   'take action,'" "is particularly disfavored," and is "not granted unless extreme or

18   very serious damage will result and [] not issued in doubtful cases. . . .") (citations

19   omitted); *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979) (a

20   mandatory injunction "goes well beyond simply maintaining the status quo

21   [p]endente lite [and] is particularly disfavored").  Finally, the preliminary relief

22   sought by Plaintiff would provide all of the relief sought in her Complaint—and

23   then some.  (*Compare* Compl. ¶ 24 *with* Motion at 1:25-2:3.)

24         As shown below, Plaintiff's motion should be denied because she has not

25   satisfied *any* of the requirements for a preliminary injunction, particularly under the

26   heightened standard applicable here.

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300253299.6

8

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**A.     Plaintiff Still Cannot Demonstrate a Likelihood of Success on the Merits.**

The Court denied Plaintiff's TRO application because, among other things, she failed to "cite to any facts or authority showing a likelihood of success on the merits or raising serious questions as to the merits on her claim under California Civil Code § 1770(a)(10)."  (Order p. 2.)  If it were possible for Plaintiff to cure this fatal defect, one would have expected her do so on this motion.  Yet she did not.

The statute cited in Plaintiff's complaint—a provision of the CLRA that prohibits "[a]dvertising goods or services with intent not to supply reasonably expectable demand," Cal. Civ. Code § 1770(a)(10)—does not impose any legal duty on Match to screen its subscribers.  Plaintiff does not contend otherwise on this motion.  Indeed, she does not even cite to the statute, which in any event seems completely irrelevant to this case.  Nor does Plaintiff cite to any other authority purportedly imposing such a duty on Match.  That is because there is none.

Numerous state legislatures, including California's, have considered whether online dating and social networking services should conduct background checks on their members.  For example, California State Assembly Bill 1681 (proposed in 2005) would have required online dating services either to screen members or to disclose that they do not conduct such screening.  (Request for Judicial Notice, Exhibit A.)  But this proposal was rejected by the legislature.  (*Id.*, Exhibit B.)  To date, not a single state has passed a law mandating screening by online dating services.[4]

Match set forth this evidence and authority in its opposition to Plaintiff's TRO application.  Tellingly, Plaintiff does not address them in her motion.  Instead,

---

[4] The only state to have enacted a law concerning screening is New Jersey, which requires only that an online dating service disclose whether it performs background checks.  *See* N.J.S.A. § 56:8-171(4)(b) (West 2008).  In compliance with the New Jersey statute, Section 7 of Match's User Agreement states: "**YOU UNDERSTAND THAT MATCH.COM DOES NOT IN ANY WAY SCREEN ITS MEMBERS, NOR DOES MATCH.COM INQUIRE INTO THE BACKGROUNDS OF ITS MEMBERS OR ATTEMPT TO VERIFY THE STATEMENTS OF ITS MEMBERS.**"  (Dubey Decl., Exhibit A.)

1    Plaintiff's entire discussion of the merits (*see* Motion at 6:1-21) is dedicated to the

2    notion that her proposed screening process is better than Match's announced plan,

3    and that Match has "put forth no evidence to the contrary."  (Motion at 6:19-20.)

4    But this "argument" presupposes a legal duty to implement screening, which simply

5    does not exist.[5]  The issue is not whether Plaintiff's proposed process would be

6    better than Match's, but whether Match is legally required to conduct *any*

7    screening.  As the party seeking a preliminary injunction, Plaintiff must show that

8    such a duty exists.  Her failure to do so compels denial of her motion.

9         Further, although Match is not required to justify either the substance or the

10   timing of its contemplated implementation of subscriber screening, Match's plan to

11   begin screening within 60 to 90 days of its April 17 announcement is based on its

12   knowledge of its own business systems and information provided by the vendors

13   consulted about the plan.  As described in the Dubey Declaration, Match must first

14   consult with vendors and then select and implement an efficacious process with the

15   vendor it retains.  Implementation involves both testing and numerous changes to

16   Match's systems.  (Dubey Decl. ¶ 9.)

17        Plaintiff's disagreements with Match's contemplated process are both

18   irrelevant to her motion and in any event unsupported by evidence.  For example,

19   the assertion that a screening process could be implemented within "a two to five

20   day business period" (Decl. of Russell Mallette ¶ 6) is wholly conclusory.  Mr.

21   Mallette's opinion is based solely upon the hearsay statements of unidentified

22   representatives of "[t]he entity that fulfills IT and background consulting

23   requirements" for Mr. Mallette's business.  (*Id*. ¶ 3.)  Moreover, Mr. Mallette is not

24   competent to opine on what process or timing would be appropriate or feasible for

25   Match.  According to his declaration, Mr. Mallette runs a three-year-old business

26   that conducts "pre-employment background screening."  (*Id*. ¶ 1.)  He claims

27
28

---

[5] Contrary to Plaintiff's unsupported assertion (*see* Motion at 8:8-9), Match's announcement that it intends to screen subscribers neither creates a legal duty to conduct screening nor constitutes a concession that any such duty exists.

1  neither expertise in screening millions of website users nor knowledge of Match's

2  internal systems.  Accordingly, his opinion is entitled to no weight.

3       As to the propriety of use of the National Sex Offender Database versus

4  "local" databases, Plaintiff does not even identify what her preferred "local"

5  databases are.  Neither Mr. Mallette nor Pierre Merkl, Plaintiff's other purported

6  expert, explains whether he is talking about local sex offender registries or other

7  databases, such as courthouse records.  Mr. Merkl, for example, states that he found

8  criminal cases relating to Plaintiff's alleged assailant by using a subscription to the

9  Los Angeles court system.  (Decl. of Pierre Merkl ¶¶ 3-4.)  This is not a state or

10  local sex offender registry but, rather, a court case database.  Yet Plaintiff does not

11  appear to assert that Match must search these types of records.  In this regard,

12  Plaintiff has not submitted any evidence showing that her alleged assailant's

13  criminal history was contained in any federal, state, or local sex offender registry.

14       In light of the foregoing, it is little wonder that Match has declined Plaintiff's

15  and her counsel's overtures to inject themselves in its deliberations concerning the

16  best way to implement the screening that Match has voluntarily undertaken to

17  conduct.

18       In sum, Plaintiff simply has no basis for claiming that Match has a legal duty

19  to conduct screening of any kind on its members or subscribers.  As a result, she

20  has not shown a likelihood of success on the merits or even serious questions going

21  to the merits.

22  **B.**   **Plaintiff Has Again Failed to Demonstrate Irreparable Harm in the Absence of Preliminary Relief.**

23

24       Irreparable harm is "the single most important prerequisite for the issuance of

25  a preliminary injunction."  *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114

26  (2d Cir. 2005).  It is not enough to show that irreparable harm is merely possible.

27  Plaintiff must show that such harm is "likely."  *Winter*, 555 U.S. at 28 ("Issuing a

28  preliminary injunction based only on a possibility of irreparable harm is

1   inconsistent with our characterization of injunctive relief as an extraordinary

2   remedy that may only be awarded upon a clear showing that the plaintiff is entitled

3   to such relief.").

4          In denying the TRO application, this Court held that "Plaintiff fails to show

5   any irreparable harm" because "Plaintiff is no longer a subscriber of [Match] and

6   has not shown how [Match]'s failure to implement immediate screening procedures

7   would harm her." (Order p. 2.)  Plaintiff's response to the Court's holding is to

8   acknowledge that it is "too late" to save her from harm, and instead emphasize her

9   desire to obtain relief on behalf of an uncertified class.  (Motion at 4:15-18.)  But

10  the Court has already foreclosed this avenue as well:  "Plaintiff attempts to argue

11  that prospective class members would face irreparable harm.  However, no class

12  has been certified in this case and it appears Plaintiff could not represent a class of

13  current subscribers."  (Order p. 2, *citing Bailey v. Patterson*, 369 U.S. 31, 32-33

14  (1962) (litigants "cannot represent a class of whom they are not a part").)

15         Even leaving Plaintiff's lack of standing aside for the moment, the

16  "evidence" submitted in support of her motion is no more probative than what the

17  Court previously rejected in denying the TRO.  Whatever weight could be given to

18  the declarations of Messrs. Mallette and Merkl, they can do nothing to advance

19  Plaintiff's arguments on irreparable harm.  Neither "expert" has asserted that any

20  injury will occur if Match elects not to adopt the screening procedures that Plaintiff

21  has, imprecisely, proposed; and any such assertion would be devoid of evidentiary

22  support.[6]  Nor do the declarations submitted by Plaintiff herself (dealing with her

23  experience using Match's service and her alleged sexual assault) and her attorney

24  (dealing with his communications with Match's counsel and his generalized

25  "research" on date rapes) provide such evidence.

26  _____

[6] Plaintiff concedes that "**no** screening, no matter how expensive, can be failsafe."
27  (Motion at 5:25-26 (emphasis in original).)  Thus, by her own admission, Match
    could do everything that Plaintiff wishes and still fail to prevent the irreparable
28  harm she inconsistently asserts would be avoided by imposition of the requested
    remedy.

1    There is simply no evidence of irreparable harm to Plaintiff or anyone else if

2    the requested preliminary injunction is not granted.

3    **C.    The Balance of the Equities Still Tips Entirely in Match's Favor.**

4         In determining whether to issue preliminary injunctive relief, courts "must

5    balance the competing claims of injury and must consider the effect on each party

6    of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 31.

7    Plaintiff, however, ignores this long-standing requirement and instead fashions her

8    own balancing test based on the relative wealth of the parties.  (Motion at 7:19-26

9    ("Match.com is a billion dollar company" while "[o]n the other side of this case is a

10   single woman").)  In Plaintiff's view, the balance of equities always tips in favor of

11   an individual plaintiff when suing a sizable company.  But that is not the law.

12        The proper inquiry concerns the effect on the parties of granting or denying

13   the proposed injunction.  *Winter*, 555 U.S. at 31.  Here, the equities entirely favor

14   Match.  The injunction sought by Plaintiff not only would shut Match down, but

15   also would prevent more than one million subscribers from communicating with

16   one another through Match's service.  (*See* Motion at 2:1-3 (seeking to enjoin

17   Match from, among other things, "facilitating further introductions between

18   subscribers").)  Meanwhile, Plaintiff *admits* that denying the relief sought will have

19   *no* effect on her, other than perhaps affording some form of psychic satisfaction.

20   (Motion at 4:15-16 ("it is too late to stop what happened to Jane Doe").)

21   **D.    Public Policy Favors Denying the Requested Relief.**

22        Courts deciding an application for preliminary injunctive relief must also

23   consider its effect on "the public interest." *Winter*, 555 U.S. at 25, 31 ("In

24   exercising their sound discretion, courts of equity should pay particular regard for

25   the public consequences in employing the extraordinary remedy of injunction.").

26   Here, the public interest strongly favors denying Plaintiff's motion.

27        Match and Plaintiff agree that the public has an interest in preventing sexual

28   assault arising out of the use of online dating services.  Presumably state

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300253299.6                                          13

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1  legislatures agree as well.  But many of those legislatures have considered the issue

2  and unanimously determined that requiring companies such as Match to conduct

3  background checks is not the way to accomplish that goal.  There is no warrant—

4  particularly on the current record—for this Court to substitute its judgment for the

5  judgment of those legislative bodies on this public policy question.

6      Indeed, were courts to undertake the task of issuing injunctions with the goal

7  of making dating safer, it is difficult to see where their work would end.  For

8  example, why limit screening to sex crimes, rather than require full-blown criminal

9  background checks?  And why limit the focus to online dating?  Under Plaintiff's

10  rationale, any establishment where singles meet—bars, restaurants, colleges, the

11  workplace, etc.—could be compelled to perform background screening of their

12  patrons, students, and employees.  Nearly all facets of daily life could be made

13  safer.  But it is the role of elected legislatures—not the courts—to decide whether

14  and how to undertake such governmental initiatives.

15      At issue in this action is not what Match *can* do or, in Plaintiff's opinion,

16  *should* do.  At issue is what Match legally *must* do.  Match is under no legal

17  obligation to screen subscribers.  For this reason among others, Plaintiff's motion,

18  and action, must fail.

19

20

21

22

23

24

25

26

27

28

1

## CONCLUSION

2      For the reasons discussed above, Match respectfully requests that this Court

3 both deny Plaintiff's motion and, in light of her conceded lack of standing, dismiss

4 this action.  Furthermore, in light of Plaintiff's insistence upon pressing forward

5 with her request for an extraordinarily broad preliminary injunction without

6 addressing any of the deficiencies identified in the Court's order denying her TRO

7 application, Match once again respectfully suggests that the Court consider the

8 imposition of appropriate sanctions for the filing of a motion so lacking in factual

9 and legal basis.[7]

10

11 Dated:  May 16, 2011                    MANATT, PHELPS & PHILLIPS, LLP
                                         ROBERT H. PLATT
12                                       JOSEPH E. LASKA

13

14                                       By:  /s/ Robert H. Platt
                                         _____
15                                       Robert H. Platt
                                         *Attorneys for Defendant*
16                                       MATCH.COM, LLC,
                                         erroneously sued as Match.com

17

18

19

20

21

22

23

24

25

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [7] *See*, *e.g.*, 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings
28   in any case unreasonably and vexatiously may be required by the court to satisfy
     personally the excess costs, expenses, and attorneys' fees. . . ."); Fed. R. Civ. P. 11.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300253299.6                              15

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION